UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| CATHEDRAL CAPITAL (1998) LTD. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO._____ |
| | ) |
| FRANK AND LORI GAUTHIER, individually, | ) |
| and/or FRANK GAUTHIER and LORI GAUTHIER | ) |
| d/b/a CRANKY FRANKIE'S; and JAMESTOWN | ) |
| SPORTS GRILL, INC. and/or JAMESTOWN | ) |
| SPORTS GRILL, INC. d/b/a CRANKY FRANKIE'S, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Cathedral Capital (1998) Ltd ("Plaintiff" or "Cathedral"), pursuant to 28 U.S.C.A. § 2201, *et seq.*, and files this action, seeking a declaration of non-coverage on an insurance policy, as follows:

### JURISDICTION AND VENUE

1.

Cathedral is an entity existing under the laws of the United Kingdom with its principal places of business at Fitzwilliam House, 10 St. Mary Axe, London, EC3A 8BF, United Kingdom. Plaintiff serves as the lead underwriter under the Policy at issue (described below) and as the representative of all other underwriters who subscribe to the Policy at issue.

2.

The Defendants Frank and Lori Gauthier ("Gauthiers"), as individuals, and as individuals operating as Cranky Frankie's and/or Frank and Lori Gauthier d/b/a Cranky Frankie's, reside in

St. Lucie County, Florida. Service of process may be perfected by certified return receipt mail to the Gauthiers in accordance with Fed. R. Civ. P. 4(e)(1) and Tennessee law.

3.

Jamestown Sports Grill, Inc. and/or Jamestown Sports Grill, Inc. d/b/a Cranky Frankie's was a corporation with its principal office at 850 Pallet Tech Drive, Jamestown, Tennessee, 38556. Jamestown Sports Grill, Inc.'s corporate status was revoked by the Tennessee Secretary of State on or around January 5, 2010. Frank Gauthier is and/or was the Registered Agent for Jamestown Sports Grill, Inc. Service of process may be perfected by certified return receipt mail to Frank Gauthier in accordance with Fed. R. Civ. P. 4(h)(1)(A) and Tennessee law.

4.

Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because it is between citizens of the state of Florida, a citizen of the state of Tennessee, and the subject of a foreign state, the United Kingdom. The Plaintiff and the Defendants are completely diverse and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the property insured under the Policy at issue is located at 850 Pallet Tech Drive, Jamestown, Tennessee ("Property"). The Policy at issue was delivered at this address.

6.

Cathedral is uncertain as to its duties, rights, and obligations, and an actual controversy exists. Cathedral, therefore, files this declaratory judgment action to resolve questions of coverage under a policy of insurance, pursuant to 28 U.S.C. § 2201, *et seq.*

## THE UNDERLYING FACTS

### 7.

Cranky Frankie's is the named Insured on Policy No. CK09186A09, which provides coverage for the Property for the period March 10, 2009, to March 10, 2010 (the "Policy"). Cathedral subscribed to the Policy. *(A true and correct copy of the Policy No. CK09186A09 is attached hereto as Exh. A.)* The Policy has pertinent limits of liability as follows: $1,200,000 (Building) and $500,000 (Business Personal Property), subject to a $5,000 per occurrence deductible.

### 8.

Cranky Frankie's operated as a bar in Jamestown, Fentress County, Tennessee. The Defendants were the owners/operators of Cranky Frankie's at all pertinent times. Before the Defendants converted the premises into a bar, it was an empty tire warehouse. The Defendants purchased the Property at some point in time in 2007 or 2008 and began to renovate it in or around January to February 2008.

### 9.

The Defendants had never owned or operated a restaurant or bar before buying the Property. At all relevant times Mr. Gauthier owned a construction company in Florida that was struggling financially during a downturn in the homebuilding economy. Mr. Gauthier's company carried out the renovations to the Property, including building an upstairs apartment living area above the office of the bar.

### 10.

The bar opened in late June 2008. At the time the bar was opened and operated, Mr. Gauthier's residence was in Port St. Lucie, Florida. Mr. Gauthier's son also resided in or around

Port St. Lucie, Florida. For the entire time the bar was operating, Mr. Gauthier and his son took turns traveling back and forth, every two weeks, between Port St. Lucie, Florida, and Jamestown, Tennessee, to operate the bar. Jamestown, Tennessee, is approximately 800 miles from Port St. Lucie. At all relevant times and to this day, the Gauthiers' permanent residence remains in Port St. Lucie, Florida.

11.

From the time the bar opened, until it ceased operations just eight months later, the bar operated at a loss. The operating account for the bar was frequently overdrawn, and Mr. Gauthier was forced to fund it with money from his struggling construction firm and from personal funds. Mr. Gauthier borrowed money to open the bar and secured the loans with the Property and his home in Florida and/or a personal certificate of deposit.

12.

Mr. Gauthier listed the bar for sale on or around April 14, 2009, with Pete Taylor of Bestway Realty. *(A true and correct copy of the listing agreement is attached hereto as Exh. B).* Mr. Gauthier was unable to sell the bar and did not sell the bar.

13.

On May 17, 2009, less than eight months after the bar opened, the Property was severely damaged by fire. The fire was incendiary in origin, having been started with gasoline that was poured in the stairway of the upstairs apartment living area over the office. On information and belief, the only people with access to the office area and the upstairs living area were the Gauthiers, Mr. Gauthier's son, and the office manager.

14.

Mr. Gauthier's son was the last known person in the bar the day of the fire. The bar was equipped with a security alarm. Mr. Gauthier's son claims he set the alarm on the day of the fire before leaving the bar. On information and belief, on the day of the fire, the alarm did not go off. On information and belief, only the Gauthiers, Mr. Gauthier's son, and the office manager had the alarm code to set and disarm the alarm.

15.

The bar was equipped with security cameras when the fire occurred. The security cameras in the area of the fire were manually severed from their cables and/or deactivated the night of the fire. The surveillance equipment and software were located in the upstairs apartment living area at the time of the fire. That equipment and software were destroyed by the fire due to its proximity to the ignition source of the blaze.

16.

In or around August 2007, just months before Mr. Gauthier purchased the Property, a barn that Mr. Gauthier built at his Florida home burned down. Mr. Gauthier claimed that he built that the barn for approximately $50,000 and recovered approximately $500,000 from his insurance company for the fire. Mr. Gauthier sunk at least part of that money into the bar.

17.

The Defendants have made a Policy limits demand of $1,200,000 for the building and $416,154.27 for the business personal property. The Defendants have submitted sworn proofs of loss, but then admitted the business personal property list contained many contents far in excess of their value.

18.

On information and belief, the Defendants planned to and did burn the Property or had someone burn the Property to claim the Policy proceeds, in violation of Tennessee law and the Policy.

## COUNT I

## CATHEDRAL HAS NO DUTY TO INDEMNIFY DEFENDANTS UNDER THE POLICY DUE TO THE DEFENDANTS' ARSON OR INVOLVEMENT IN ARSON

19.

Cathedral incorporates each and every one of the preceding paragraphs, as if fully stated herein.

20.

Under Tennessee law, an insurer may deny a claim based on arson when:

    1) the loss was due to a fire of incendiary origin,

    2) the insured had an opportunity to set the fire, and

    3) he had a motive to do so.

21.

At the time of the fire, the bar was failing financially, a loan for the bar was secured by the Gauthiers' Florida home, and the Gauthiers had been unable to sell the Property.

22.

The fire was incendiary in nature having been started by gasoline in an area to which only the Defendants or their office manager had access. In addition, the Gauthiers' son was the last person to be in the building the day the building burned.

23.

As a result of the foregoing, the Defendants had the opportunity and motive to set the fire at the Property for monetary gain. Consequently, Cathedral asks for a declaration that there is no coverage under the Policy for the fire loss to the Defendants.

## COUNT II

## CATHEDRAL HAS NO DUTY TO INDEMNIFY DEFENDANTS UNDER THE POLICY AS COVERAGE IS VOID DUE TO CONCEALMENT, MISREPRESENTATION, AND/OR FRAUD

24.

Cathedral incorporates each and every one of the preceding paragraphs, as if fully stated herein.

25.

The Policy provides as follows:

**COMMERCIAL PROPERTY CONDITIONS**

\* \* \*

A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

26.

Under the Policy, the Defendants committed "fraud by you as it relates to this Coverage Part" and/or intentionally concealed or misrepresented material facts regarding "[a] claim under this Coverage Part," and coverage is void.

27.

During the investigation of the fire loss, the Defendants made fraudulent statements and/or intentionally concealed or misrepresented material facts regarding the cause of the fire at issue.

28.

During the investigation of the fire loss, the Defendants made fraudulent statements and/or intentionally concealed or misrepresented material facts regarding whether the Property had been for sale prior to the loss.

29.

The Defendants made an admittedly inflated claim for business personal property damages allegedly caused by the fire at issue.

30.

The Defendants' fraud was committed with the intent to deceive Cathedral.

31.

Cathedral, therefore, asks for a declaration that there is no coverage under the Policy for the fire loss to the Defendants pursuant to the Policy's Concealment, Misrepresentation Or Fraud provision and/or Tennessee law due to the Defendants' intentional concealment, misrepresentation, and/or fraud.

8
Case 2:10-cv-00052 Document 1 Filed 06/01/10 Page 8 of 9 PageID #: 8

WHEREFORE, Cathedral hereby requests that a judgment be entered as follows:

(a) Determining and declaring 1) that the fire loss to the Property was due to a fire of incendiary origin, 2) that the Defendants had an opportunity to set the fire, and 3) that the Defendants had a motive to do so, and, as a result, committed arson or were involved with the commission of arson under Tennessee law;

(b) Determining and declaring that the Defendants committed intentional concealment, misrepresentation, and/or fraud, and as a result, coverage is void and the Defendants cannot recover for the loss under the Policy and/or Tennessee law;

(c) Determining and declaring that as a result of the Defendants' intentional concealment, misrepresentation, and/or fraud; and/or that as a result of the fire loss to the Property due to a fire of incendiary origin, the insured's opportunity to set the fire, and the insured's motive to do so; Cathedral does not owe any payment to the Defendant for the fire loss under the Policy; and

(d) An award of all other relief, in law and equity, to which Cathedral may be entitled.

PLAINTIFFS DEMAND TRIAL BY JURY.

This 28th day of May 2010.

FIELDS HOWELL
191 Peachtree Street, Suite 4600
Atlanta, GA 30303
Telephone: 404.214.1250
Facsimile: 404.214.1251

*/s/ Nanette Wesley*
Nanette L. Wesley
Tennessee Bar No.: 19197

*Attorney for Plaintiff*